WATSON *v.* BOYDSTUN.

Opinion delivered December 15, 1919.

HIGHWAYS — LIMITATION ON CONSTRUCTION — "LAST COUNTY ASSESS-MENT."—Road Acts 1919, volume 1, page 105, creating the "Monette Road Improvement District," in limiting (in section 14) the cost of the construction to 30 per cent. of the "last county assessment," meant, not the last assessment preceding the construction of the improvement, but the last assessment preceding the enactment of the statute.

Appeal from Craighead Chancery Court, Eastern District; *Archer Wheatley,* Chancellor; reversed.

*Huddleston, Fuhr & Futrell,* for appellant.

The demurrer of plaintiff should have been sustained. The "Monette" Act No. 68, Acts 1919, if constitutional, allows the commissioners to let a contract for an illegal and excessive assessment and the plans and specifications are illegal, unauthorized and void. Section 14 of said Act 68 uses the words "last county assessment" and means for the year 1919, not 1918, and the assessment is excessive and void.

*S. P. Patton,* for appellee.

The estimated cost of the improvement is less than 30 per cent. of the last county assessment preceding the assessment. 84 Ark. 257; 97 *Id.* 334; 96 N. W. 450.

McCULLOCH, C. J. The General Assembly of 1919 (regular session) enacted a statute creating a road improvement district designated as "Monette Road Improvement District," composed of lands in Craighead County. Acts 1919, vol. 1, p. 105. The statute contains a description of the boundaries of the district, the route of the road to be improved, the names of the commissioners and the authority to construct the improvement, borrow money and levy and collect assessments on the benefits accruing to the lands in the district. The statute provides for a board of assessors to value the anticipated benefits. Section 14 of the statute, to the interpretation of which the present controversy relates, reads as follows:

"The State Highway Department shall at all times render any assistance within its power, and, if called upon by the district, shall have general supervision of the work of the engineer employed by the district. The construction cost of the improvements of the road herein called for, not including interest on borrowed money, shall not exceed in cost thirty per cent. of the values of all lands and real estate and real property in the district, as shown by the last county assessment; and in arriving at the proportion of the assessed value of any railroad, part of whose line or property is used for railroad purposes, within the district, the rate of value per mile of said railroad fixed by the State Tax Commissioner shall be used for each mile or fraction of a mile, or railroad or sidetracks within the district."

Appellant is the owner of real property in the district, and instituted this action in the chancery court of Craighead County to restrain proceedings under the statute on the ground that appellees, who are the commissioners of the district, have made plans and are about to con-

struct the improvement at a cost largely beyond the limits prescribed in that section of the statute.

The facts bearing on the point in controversy are set forth in the complaint and answer and must be taken as true, the court having overruled appellant's demurrer to the answer.

The commissioners have adopted plans and reported same to the county court for the construction of the improvement at a cost of $452,650, and the assessments on real property in the district for the year 1918 for State and county taxation, including tramways and railroads, amounts to the sum of $939,795, and thirty per centum thereof is $281,938.50. The cost of the improvement is, therefore, largely in excess of thirty per centum ''of the value of all lands and real estate and real property in the district as shown by the last county assessment,'' if the assessments for the year 1918 are to be considered as the basis. It is, however, alleged in the answer that the assessment for the year 1919, which was then in progress at the time this suit was pending in the court below (June, 1919,) would amount to the sum of $1,539,545, and that the cost of the construction of the improvement would not, according to the plans adopted, amount to more than thirty per centum of that sum.

The question in the case then is whether the words ''the last county assessment'' in section 14 of the statute relates to the last assessment preceding the enactment of the statute, or whether it means the last assessment preceding the construction of the improvement.

We are of the opinion that the special statute in question relates to an assessment already in existence, and that it fixes the completed assessment for State and county taxation for the year 1918 as the basis for limiting the total cost of the improvement authorized by the statute. This is a special statute, it will be noticed, and contemplates immediate initiation and progress in making the improvement prescribed and it is evident that the lawmakers intended to fix a definite basis for the limitation of the cost of the construction. It is left to the commis-

sioners to form the plans for the improvement and to carry them out to completion, but this limitation was set by the lawmakers in the very beginning for guidance of the commissioners in determining whether or not the work could be done.

Counsel for appellees rely on the case of *Improvement District* v. *Offenhauser,* 84 Ark. 257, where we construed a section of the general statute relating to improvement districts in cities and towns, which reads as follows:

"It shall be provided by ordinance that the local assessment of benefits shall be paid in successive annual installments, so that no local assessment shall in any one year exceed twenty-five per centum of the assessed benefits accruing to said real property. The ordinance shall fix the day in each year when the local assessments for the year shall be paid, and the day fixed for the payment of the first installment shall not be later than sixty days from the date of the ordinance making the local assessment; provided, no single improvement shall be undertaken which alone will exceed in cost twenty per centum of the value of the real property in such district as shown by the last county assessment." Kirby's Digest, section 5683.

We decided in that case that the words "last county assessment" meant the last completed assessment in force, with additions made by the board of equalization, at the time of the passage of the ordinance levying the assessments of benefits. The statute there construed was a general and continuing one for the organization of improvement districts in cities and towns, while the statute now under consideration is a special one directly conferring authority to immediately proceed with the construction of the authorized improvement. It is clear that the general statute dealt with in the case cited above fixed a future date for the test in limiting the assessments on benefits according to the facts in each particular case at the time of the enactment of the ordinance levying the assessments, and it is equally clear that the present stat-

ute looks backward and refers to the last assessment already in existence at the time of the passage of the statute in creating a test for the limitation upon the authority of the commissioners with respect to the amount of the cost of improvement.

Counsel also rely on expressions in the case of *McDonnell* v. *Improvement District No. 145, Little Rock,* 97 Ark. 334, but in that case we were dealing with another subject, and nothing akin to the point involved in the present case was involved in that case.

According to the admissions in the answer, the commissioners are exceeding the limitation in the statute with respect to the cost of the improvement, and the court should have sustained the demurrer. The decree is therefore reversed, and the cause remanded with directions to the chancery court to sustain the demurrer to the answer, and for further proceedings not inconsistent with this opinion.